## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERRELL ROHEILA, as parent of J.R., RODNEY WHITE, as parent of N.W. and N.W.,  and PROPEL CHARTER SCHOOL – HOMESTEAD, PROPEL CHARTER SCHOOL -- McKEESPORT, PROPEL CHARTER SCHOOL – SUNRISE, PROPEL CHARTER SCHOOL – PITCAIRN,  PROPEL CHARTER SCHOOL - HAZELWOOD, PROPEL CHARTER SCHOOL - EAST and YOUNG SCHOLARS OF GREATER ALLEGHENY CHARTER SCHOOL, | : : : : : : : : : : : : : | CASE NO.   2:22-CV-1230 |
| | : | |
| Plaintiffs, | : : | **COMPLAINT – CIVIL ACTION** |
| | : | |
| v. | : : : | *Jury Trial Demanded* |
| McKEESPORT AREA SCHOOL DISTRICT and WOODLAND HILLS SCHOOL DISTRICT, | : : : : | |
| | : | |
| Defendants. | : | |

1

## COMPLAINT – CIVIL ACTION

Plaintiffs, Jerrell Roheila, as parent of J.W., Rodney White, as parent of N.W and N.W, (hereinafter collectively, "**Parents' Students**"), Propel Charter School – Homestead, Propel Charter School -- McKeesport, Propel Charter School – Sunrise, Propel Charter School – Pitcairn, Propel Charter School – Hazelwood, Propel Charter School – East (together, "**Propel**"), and Young Scholars of Greater Allegheny Charter School, (collectively, the "**Charter Schools**"), by and through their undersigned Counsel, file the following Complaint against Defendants, McKeesport Area School District ("**MASD**") and Woodland Hills School District ("**WHSD**"), and in support thereof avers as follows:

### I.      BACKGROUND

1.      This action is brought by the Charter Schools as well as Parents of Students that attend the Charter Schools against two western Pennsylvania School Districts that are legally required pursuant to the Pennsylvania School Code and Pennsylvania Charter School Law to provide transportation to students residing within the school district.

2.      Although agreements for transportation were contemplated and approved by the School Districts months prior to the start of the 2022-2023 school year, it was only in the past 48 hours that MASD and WASD notified the Charter Schools of their inability to transport the hundreds of students that currently attend and were already being transported by the School Districts to the Charter Schools.

3.      Rather than the School Districts equitably apportioning the allegedly available transportation among the district and public charter school students, the District Schools have unabashedly and with little more than 48 hours notice, decided to continue to transport ALL of the District Schools' students and discontinue transportation to the Charter Schools.

4.      The actions of the District Schools constitute violations of the Equal Protection Clause, Due Process Clause, Section 1983, as well as numerous Pennsylvania law provisions mandating transportation for the public charter school students.

5.      Plaintiffs seek injunctive and declaratory relief from this Honorable Court.

## PARTIES

6.      Plaintiff, Jerrell Roheila, is an adult individual and parent of J.W., who resides at 2302 Mercantile Street, McKeesport, Pennsylvania, 15132

7.      J.W. is a student who attends Propel Charter School – McKeesport.

8.      Plaintiff Rodney White is an adult individual and parent of N.W. and N.W., who resides at 513 Kenmawr Avenue, Rankin, Pennsylvania 15104.

9.      N.W. and N.W. are students who attend Propel Charter School – Pitcairn.

10.     Plaintiff, Propel Charter School – Homestead, is a Pennsylvania nonprofit corporation, operating a public charter school for grades K-12[1] called Propel Charter School – Homestead, located at 129 E. 10th Avenue, Homestead, Pennsylvania 15120 and Propel Charter School – Homestead, d/b/a Andrew Street High School, located at 605 E. 10th Avenue, Munhall, Pennsylvania 15120.

11.     Plaintiff, Propel Charter School -- McKeesport, is a Pennsylvania nonprofit corporation, operating a public charter school for grades K-8 called Propel Charter School - McKeesport, located at 2412 Versailles Ave, McKeesport, Pennsylvania 15132.

12.     Plaintiff, Propel Charter School – Sunrise, d/b/a Propel Charter School – Braddock Hills[2], is a Pennsylvania nonprofit corporation, operating a public charter school for grades K-12

---

[1] Propel Homestead consists of two separate public schools:  Propel Homestead (K-8) and Propel Andrew Street High School (9-12)
[2] Propel Sunrise consists of three separate public schools:  Propel Braddock Hills Elementary School (K-5), Propel Braddock Hills Middle School (6-8) and Propel Braddock Hills High School (9-12).

called Propel Charter School – Braddock Hills, located at 1500 Yost Boulevard, Braddock Hills, Pennsylvania 15221.

13.     Plaintiff, Propel Charter School – Pitcairn, is a Pennsylvania nonprofit corporation, operating a public charter school for grades K-8 called Propel Charter School - Pitcairn, located at 2435 Agatha Street, Pitcairn, Pennsylvania 15140.

14.     Plaintiff, Propel Charter School – Hazelwood, is a Pennsylvania nonprofit corporation, operating a public charter school for grades K-8 called Propel Charter School - Hazelwood, located at 5401 Glenwood Avenue, Pittsburgh, Pennsylvania, 15207.

15.     Plaintiff, Propel Charter School – East, is a Pennsylvania nonprofit corporation operating a public charter school for grades K-8 called Propel Charter School - East, located at 1611 Monroeville Avenue, Turtle Creek, Pennsylvania 15145 (hereinafter, all Propel plaintiffs collectively referred to as "**Propel**").

16.     The most recent student demographics from October 2021 for Propel indicate that 74% of its scholar population is African American, 82 % of its scholar population is economically disadvantaged and 20% of its scholar population receive special education services.

17.     Propel has authority to bring this lawsuit on behalf of its scholars who have been denied transportation by the School Districts because of the impediments that the parents of the scholars have in bringing a lawsuit on their own behalf.

18.     In particular, the timing of the events of this case and the significant economically disadvantaged population enrolled at the Charter Schools places a very high burden on the parents of the affected students to retain counsel and prosecute a lawsuit directly.

19.     Plaintiff, Young Scholars of Greater Allegheny Charter School ("**YSGA**"), is a Pennsylvania nonprofit corporation, operating a public charter school for students in grades K-5

called Young Scholars of Greater Allegheny Charter School, located at 10 Center Street, McKeesport, Pennsylvania 15132.

20.     The most recent student demographics for YSGA indicate  that 83% of its scholar population is African American (with an overall 85% minority population), 27% of its scholar population receive special education services and 100% of its scholar population is economically disadvantaged and receive free lunches.

21.     Defendant, McKeesport Area School District ("**MASD**") is a public school district organized and operated under the law of the Commonwealth of Pennsylvania, with administrative offices located at 3590 O'Neil Boulevard, McKeesport, Pennsylvania 15132.

22.     The most recent student demographics from October 2021 for MASD indicate that 47% of its student population is African American, 73 % of its student population is economically disadvantaged and 28% of its scholar population receive special education services.

23.     Defendant, Woodland Hills School District ("**WHSD**") is a school district organized and operated under the law of the Commonwealth of Pennsylvania, with administrative offices located at 531 Jones Avenue, North Braddock, Pennsylvania 15104. (Collectively the defendants will be referred to as the "**School Districts**").

24.     The most recent student demographics from October 2021 for WHSD indicate that 62% of its scholar population is African American, 71% of its scholar population are economically disadvantaged and 28% of its scholar population receive special education services.

## II.     JURISDICTION AND VENUE

25.     This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331 and 1343 which confer original jurisdiction on federal district courts to hear suits alleging the violations of rights and privileges under the United States Constitution. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

26.     Venue is proper under 28 U.S.C. §1391(b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

### III.     LEGAL AND FACTUAL BACKGROUND

27.     It is uncontroverted that the School Districts are legally required by the Pennsylvania School Code to provide transportation for public charter school students who reside in their districts.  24 P.S. §§1361; 1726.

28.     It is unequivocally the legal obligation of the School District of residence of each student attending a charter school to provide that transportation. *Id.*

29.     To that end Section 1726 of the Charter School Law (which is part of the School Code) provides:

> (a) ***Students who attend a charter school located in their school district of residence, . . . shall be provided free transportation to the charter school by their school district of residence on such dates and periods that the charter school is in regular session whether or not transportation is provided on such dates and periods to students attending schools of the district.*** Transportation is not required for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway from the charter school in which the students are enrolled unless the road or traffic conditions are such that walking constitutes a hazard to the safety of the students when so certified by the Department of Transportation, except that if the school district provides transportation to the public schools of the school district for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway under nonhazardous conditions, transportation shall also be provided to charter schools under the same conditions.

24 Pa. Stat. Ann. § 17-1726-A (West)(emphasis added).

30.     Similarly, Section 1361 of the School Code requires:

> (1) The board of school directors in any school district may, out of the funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway, except that such ten-mile limit shall not

apply to area career and technical schools which regularly serve eligible district pupils or to special schools and classes approved by the Department of Education, and to and from any points within or without the Commonwealth in order to provide field trips for any purpose connected with the educational pursuits of the pupils. ***When provision is made by a board of school directors for the transportation of public school pupils to and from such schools or to and from any points within or without the Commonwealth in order to provide field trips as herein provided, the board of school directors shall also make identical provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary and high schools not operated for profit to and from such schools or to and from any points within or without the Commonwealth in order to provide field trips as herein provided. Such transportation of pupils attending nonpublic schools shall be provided during regular school hours on such dates and periods that the nonpublic school not operated for profit is in regular session, according to the school calendar officially adopted by the directors of the same in accordance with provisions of law.*** The board of school directors shall provide such transportation whenever so required by any of the provisions of this act or of any other act of Assembly.

24 Pa. Stat. Ann. § 13-1361 (West)(emphasis added).

31.    Prior to the 2022-2023 school year, the School Districts transported the Charter Schools' students, including Parents' Students pursuant to the requirements contained in the Pennsylvania School Code.

32.    At its May 25, 2022 meeting, the MASD School Board unanimously approved a proposal from Krise Transportation ("**Krise**") to provide student services from June 2, 2022 through June 30, 2029.

33.    At its June 24, 2022 meeting, the WHSD School Board unanimously approved an agreement with Krise to provide student transportation effective July 1, 2022 through June 30, 2029.  (the "**Krise Agreement**")

34.    The Krise Agreement specifically requires Krise to provide transportation to "school pupils who shall be designated by the DISTRICT, attending School DISTRICT schools, charter schools, and non-public schools located within the boundaries of the School DISTRICT. .

." A true and correct copy of the Krise Agreement approved at the WHSD June 24, 2022 meeting is attached hereto as Exhibit 1.

35.    Furthermore, the Krise Agreement provides that the transportation "shall commence on the first day of the Contract for the transportation of all eligible students as designated by the DISTRICT." *Id.*

36.    Upon information and belief, the School Districts were aware of the number of Charter School students who required transportation when contracting with Krise for transportation services for the 2022-2023 school year and beyond.

37.    The 2022-2023 school year for all Propel charter scholars including Parents' Students began Wednesday, August 17, 2022.

38.    Within 48 hours after the first day of school at Propel, on Friday, August 19, 2022, Propel received a communication from the Supervisor of School Services at MASD indicating that MASD would no longer be able to provide transportation to Propel, including Parents' Students after Monday, August 22, 2022.

39.    According to the August 19, 2022 email, Krise "is currently training and recruiting additional drivers. . . Your buses will run as normal on Monday."

40.    On Monday, August 22, 2022, Propel received an email at 1:08 pm that transportation would no longer be provided by MASD due to "the bus driver shortage."

41.    The first day of school for MASD was the following day, Tuesday August 23, 2022.

42.    That same day was the first day MASD ceased providing transportation to Propel scholars, including Parents' Students.

43.    Also on Tuesday, August 23, 2022, at 1:46 pm, Propel was notified via email by Steph Garrity, the transportation supervisor for WHSD that "we [WHSD] will not have school bus

transportation for your school at this time.  We are awaiting the new applicants to become CDL licensed in order to operate the bus assigned to your school."

44.    The August 23, 2022 email also stated, "[r]outes that are cancelled until further notice due to driver shortage:  Propel East Route 440; Propel Hazelwood Route 213; Propel Braddock Hills Routes 701, 702, 703, 704 and Pitcairn Route 705."

45.    The first day of school for WHSD was Wednesday August 24, 2022.

46.    It is estimated by Propel that the cancellation of the transportation to Propel by the School Districts impacts over 650 Propel scholars, including Parents' Students.

47.    For the first four (4) days of school for scholars at Propel, there were sufficient bus drivers and scholars were transported to Propel schools by MASD and WHSD via Krise without incident. Parents' Students were transported to school via bus transportation.

48.    However, as noted above, approximately 18 hours prior to school beginning at MASD, Propel was notified by MASD that it would no longer be providing transportation to Propel scholars, including Parents' Students.

49.    Similarly, approximately 18 hours prior to school beginning at WHSD, Propel was notified by WHSD that it would no longer be providing transportation to Propel scholars.

50.    Consistent with Propel, YSGA also received a notification on Tuesday, August 23, 2023, from MASD indicating that it was unable to provide any transportation to YSGA students.

51.    YSGA's school year will being on August 29, 2022.

52.    It is estimated by YSGA that the cancellation of transportation by MASD impacts at least 173 students in the MASD.

53.     It is believed and therefore averred that the District Schools are moving all available Krise drivers to bus routes for their own District Schools and intentionally not providing transportation to the Charter Schools, including Parents' Students.

54.     It is believed and therefore averred that no attempt has been made by the District Schools to proportionally divide up the available buses amongst the Charter Schools and the District Schools in an effort to lessen the impact of the alleged bus driver shortage.

55.     It is believed and therefore averred that neither MASD nor WHSD sought approval from the Pennsylvania Department of Transportation for this alteration in the "means of pupil transportation" as required by the School Code regulations. *See*, 22 Pa. Code §23.2

56.     It is believed and therefore averred that the School Districts purposefully provided virtually no notice to the Charter Schools and/or Parents' Students regarding any alleged transportation issues in an attempt to encourage charter school families such as Parent to return to District Schools due to transportation difficulties.

57.     Parents of students that are enrolled in the Charter Schools have notified the Charter Schools that they are contemplating withdrawal of their students as a result of the transportation issues caused by the School Districts.

58.     In support of this belief, Plaintiffs cite to a news article published on August 22, 2022 by WPXI.com article, wherein Krise Transportation Regional Manager Sean Dobish is quoted as stating "[f]or the Propel kids we feel bad because we started picking up those kids last week and now, **we have to shift gears and go pick up the [district] public-school kids.**" (emphasis added). A true and correct copy of the article is attached hereto as Exhibit 2.

59.     Similarly, the article indicates that "[t]he transportation company tell Channel 11 they're working on a fix to the problem but for now, their focus is on the public-school students."

60.     The actions taken by the School Districts are taken under alleged color of law and there is no reasonable or substantial basis to allow the School Districts to direct the transportation of their own students while excluding and prohibiting the transportation of the Charter School students, including Parents' Students, most of whom are African American, economically disadvantaged, and many of whom receive special education services.

61.     The failure to provide transportation to the Charter School students by the School Districts has deprived the Plaintiffs, including Parents' Students and all other Propel and YSGA students of an equal and adequate public education.

62.     The School Districts students are not subjected to the same conditions, as described above, as the Charter School students; the conditions under which the Charter School students, including Parents' Students are subjected have and will continue to negatively impact their access to education and ability to learn.

## IV.    CAUSES OF ACTION

### COUNT I
### *Fourteenth Amendment Violation of Due Process*

63.     Plaintiffs incorporate by reference the forgoing allegations as though fully stated herein.

64.     This claim is brought in accordance with 42 U.S.C. §1983.

65.     Pursuant to the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law. . ." U.S. Const. amend. XIV, § 1.

66.     Under the Pennsylvania Administrative Code, "[e]ducation is a statutory right, and students must be afforded all appropriate elements of due process if they are to be excluded from school." 22 Pa.Code § 12.8(a).

67.     Similarly, public school students, including Parents' Students have a property right under Pennsylvania law to receive free transportation to their school by the resident school district. See, 24 Pa. Stat. Ann. § § 13-1361; 17-1726-A.

68.     Public school students, including Parents' Students have a property right under Pennsylvania law to receive free transportation provided by resident school districts because the transportation enables the students to comply with Pennsylvania compulsory attendance law. See, 24 Pa. Stat. Ann. § 13-1326.

69.     The School Districts, acting under color of state law, in providing transportation to its own district students and requiring that bus routes affected by an alleged "driver shortage" only impact the Charter Schools, including Parents' Students, have deprived the students enrolled at the Charter Schools of their property rights to receive free transportation and to receive an education. Such deprivation has occurred without due process of law.

## COUNT II

### *Fourteenth Amendment Violation of Equal Protection*

70.     Plaintiffs incorporate by reference the forgoing allegations as though fully stated herein.

71.     This claim is brought in accordance with 42 U.S.C. §1983.

72.     The Fourteenth Amendment directs that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

73.     Students who attend the Charter Schools and reside within the boundaries of the School Districts, including Parents' Students have received and are receiving different treatment by the School Districts than those students who attend district schools – namely, the Charter Schools' students, including Parents' Students, are no longer receiving transportation to school, while the School Districts' students are receiving transportation.

74.     The School Districts' actions in providing transportation to its own district students and requiring that bus routes affected by an alleged "driver shortage" only impact the Charter Schools and Parents' Students is arbitrary and irrational given the School Districts' legal requirement under Pennsylvania law to provide transportation to their resident students attending charter schools.

75.     The School Districts intentionally treated the Charter Schools, including Parents' Students student differently from others similarly situated with no rational basis.

76.     The School Districts' refusal to provide transportation to the Charter Schools, including Parents' Students is arbitrary and is not rationally related to any legitimate government interest.   Defendants actions therefore violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and has harmed and continues to harm the students enrolled at the Charter Schools, Parents' Students.

77.     By intentionally preventing the Charter Schools' students, including Parents' Students from being transported to school, particularly when the demographic make-up of Plaintiffs' enrollment consists of a significant percentage of African American and economically disadvantaged students, Defendants have engaged in conduct that is discriminatory, arbitrary, unreasonably, malicious, improperly motivated and conscience-shocking.

## COUNT III

### *Violation of Due Process under the Pennsylvania Constitution, Art. I., § 1*

78.     Plaintiffs incorporate by reference the forgoing allegations as though fully stated herein.

79.     The Due Process Clause of the Pennsylvania Constitution provides, "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which

are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. Art. I, § 1.

80.     Under the Pennsylvania Administrative Code, "[e]ducation is a statutory right, and students must be afforded all appropriate elements of due process if they are to be excluded from school." 22 Pa.Code § 12.8(a).

81.     Similarly, public school students including Parents' Students have a property right under Pennsylvania law to receive free transportation to their school by the resident school district. See, 24 Pa. Stat. Ann. § § 13-1361; 17-1726-A.

82.     Public school students including Parents' Students have a property right under Pennsylvania law to receive free transportation provided by resident school districts because the transportation enables the students to comply with Pennsylvania compulsory attendance law. See, 24 Pa. Stat. Ann. § 13-1326.

83.     The School Districts, acting under color of state law, in providing transportation to its own district students and requiring that bus routes affected by an alleged "driver shortage" only impact the Charter Schools including Parents' Students has deprived the students enrolled at the Charter Schools including Parents' Students of their property rights to receive free transportation and to receive an education.  Such deprivation has occurred without due process of law in violation of Pa. Const. Art. I, § 1.

## COUNT IV

### *Violation of Equal Protection under Pennsylvania Constitution, Art. I., § 26*

84.     Plaintiffs incorporate by reference the forgoing allegations as though fully stated herein.

85.     Pursuant to the Pennsylvania Constitution, "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. Art. I, § 26.

86.     Under the Pennsylvania Constitution, the right to public education is a fundamental right.

87.     Students who attend the Charter Schools and reside within the boundaries of the School Districts including Parents' Students have received and are receiving different treatment by the School Districts than those students who attend district schools – namely, the Charter Schools' students including Parents' Students are no longer receiving transportation to school, while the School Districts' students are receiving transportation.

88.     The School Districts' actions in providing transportation to its own district students and requiring that bus routes affected by an alleged "driver shortage" only impact the Charter Schools' student including Parents' Students is arbitrary and irrational given the School Districts' legal requirement under Pennsylvania law to provide transportation to charter schools.

89.     The School Districts intentionally treated the Charter Schools' students including Parents' Students differently from others similarly situated with no rational basis.

90.     The School Districts' refusal to provide transportation to the Charter Schools including Parents' Students is arbitrary and is not rationally related to any legitimate government interest.   Defendants' actions therefore violate Article I, Section 26 of the Pennsylvania Constitution and has harmed and continues to harm the students enrolled at the Charter Schools including Parents' Students.

91.     By intentionally preventing the Charter Schools' students including Parents' Students from being transported to school, particularly when the demographic make-up of

Plaintiffs' enrollment consists of a significant percentage of African American and economically disadvantaged students, Defendants have engaged in conduct that is discriminatory, arbitrary, unreasonably, malicious, improperly motivated and conscience-shocking in violation of Article I, § 26 of the Pennsylvania Constitution.

## COUNT V

### *Violation of State Created Right to a Free Public Education under PA Constitution, Art. 3, § 14*

92.     Plaintiffs incorporate by reference the forgoing allegations as though fully stated herein.

93.      Pursuant to the Pennsylvania Constitution, "[t]he General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. Art. 3, § 14.

94.     Under the Pennsylvania Constitution, students, including Parents' Students cannot be denied a free public education without being afforded due process protection.

95.     The School Districts, acting under color of state law, in providing transportation to its own district students and requiring that bus routes affected by an alleged "driver shortage" only impact the Charter Schools' students, including Parents' Students, has deprived the students enrolled at the Charter Schools, including Parents' Students of their constitutionally protected rights to receive an education.  Such deprivation has occurred without due process of law and in violation of the Pennsylvania Constitution Art. 3, §14.

## COUNT VI

### *Claim for Declaratory Judgement and Injunctive Relief*

### *Violation of Pennsylvania Public School Code*

96.     Plaintiffs incorporate by reference the forgoing allegations as though fully stated herein.

97.     Section 17-1726-A(a) of the Pennsylvania Public School Code provides:

Students who attend a charter school located in their school district of residence, a regional charter school of which the school district is a part or a charter school located outside district boundaries at a distance not exceeding ten (10) miles by the nearest public highway shall be provided free transportation to the charter school by their school district of residence on such dates and periods that the charter school is in regular session whether or not transportation is provided on such dates and periods to students attending schools of the district [...].

24 P.S. § 17-1726-A(a).

98.     Similarly, Section 1361 of the School Code requires:

The board of school directors in any school district may, out of the funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway . . . When provision is made by a board of school directors for the transportation of public school pupils to and from such schools or to and from any points within or without the Commonwealth in order to provide field trips as herein provided, the board of school directors shall also make identical provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary and high schools not operated for profit to and from such schools or to and from any points within or without the Commonwealth in order to provide field trips as herein provided. Such transportation of pupils attending nonpublic schools shall be provided during regular school hours on such dates and periods that the nonpublic school not operated for profit is in regular session, according to the school calendar officially adopted by the directors of the same in accordance with provisions of law. The board of school directors shall provide such transportation whenever so required by any of the provisions of this act or of any other act of Assembly.

24 Pa. Stat. Ann. § 13-1361.

99.     The Charter Schools are located within ten (10) miles of the boundaries of the School Districts.

100.    Under 24 P.S. § 17-1726-A(a) and 24 Pa. Stat. Ann. § 13-1361, Defendants are obligated to provide transportation to students residing within their boundaries and attending the Charter Schools including Parents' Students.

101.    The School Districts' transportation obligations under the Pennsylvania School Code are clear and straightforward.

102.   A combined reading of §§ 13-1361 and 17-1726-A(a) indicate that when the Charter School Law was adopted in Pennsylvania, the legislators elected to require that a school district provide certain levels of transportation to charter school students, including Parents' Students.

103.   Despite the unambiguous language contained in these statutory provisions, Defendants determined that when faced with an alleged "bus driver shortage," the best course of action was to provide transportation solely to its own School District students and to suspend transportation to all the Charter Schools' students including Parents' Students.

104.   Presently between the parties an actual controversy exists regarding whether Defendants are required and must equitably provide transportation to all of its resident students, including Parents' Students, not just the resident students attending the district schools.

105.   The inability of Defendants to fulfill their obligations under 24 P.S. § 17-1726-A(a) and 24 Pa. Stat. Ann. § 13-1361 constitute *per se* irreparable harm to Plaintiffs and Plaintiffs' students.

106.   Many of the Charter Schools' students, including Parents' Students are unable obtain alternate transportation and some will not attend school completely or for full days on the days where they have been deprived of transportation by the School Districts.

107.   As such, an injunction is necessary to prevent immediate and irreparable harm to Plaintiffs that cannot be compensated adequately by damages.

108.   This impediment on the safety and education of the Charter Schools' students including Parents' Students is incapable of quantification. Therefore, greater injury would result from refusing the injunction than from granting it, and the issuance of an injunction will not substantially harm other interested parties in the proceedings.

109.     Requiring the Defendants to provide timely, safe, and equal transportation to all students, including those attending the Charter Schools and Parents' Students, would properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct.

110.     Plaintiffs have a clear right to relief and are likely to prevail on the merits.

111.     The grant of the preliminary injunction would not adversely affect the public interest, instead it would only serve the public interest to provide scholars with the services they need to safely obtain an education.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants jointly and severally, and seek relief as follows:

(1)     a declaration that the Defendants must provide transportation to the Plaintiffs

(2)     a permanent injunction  (a) to prohibit Defendants from eliminating all transportation to the Plaintiffs; (b) to require Defendants, should there be any shortage of bus drivers, to provide transportation to Plaintiffs' students that is equal to the transportation provided to other students in the Defendants' district schools and (c) prohibiting Defendants from otherwise discriminating against Plaintiffs;

(3)     award Plaintiffs their costs and expenses, including reasonable attorneys' fees under 42 U.S.C. §1983 and §1988;

- and –

(4)     grant such other relief as this Court deems appropriate.

Dated: August 25, 2022

Respectfully submitted,

STRASSBURGER McKENNA
GUTNICK & GEFSKY

By: __/s/Alan T. Shuckrow_____
    Alan T. Shuckrow
    Pa. I.D. No.: 74586
    ashuckrow@smgglaw.com
    David A. Strassburger
    Pa. I.D. No.: 76027
    dstrassburger@smgglaw.com
    Kathryn L. Clark
    Pa. I.D. No.: 80201
    kclark@smgglaw.com

    Four Gateway Center, Suite 2200
    444 Liberty Avenue
    Pittsburgh, PA 15222

    (412) 281-5423 (phone)
    (412) 281-8264 (fax)

    *Counsel for Plaintiffs*

    **JURY TRIAL DEMANDED**

## **VERIFICATION**

I, David Aiden, being duly sworn, depose and say that I am CEO and Superintendent of

Plaintiff Young Scholars of Greater Allegheny Charter School, Plaintiff in the above-captioned

case, and have authorized the filing of this Complaint. I have reviewed the allegations made in

the Complaint, and regarding those allegations of which I have personal knowledge, I believe them

to be true. As to those allegations of which I do not have personal knowledge, I rely on information

obtained from employees and affected families at Young Scholars of Greater Allegheny Charter

School and believe those allegations to be true.


David Aiden
CEO and Principal of Plaintiff, Young
Scholars of Greater Allegheny Charter
School


Sworn to me this 25th day of August, 2022

Notary Public

Commonwealth of Pennsylvania - Notary Seal
ANNE C BACON - Notary Public
Allegheny County
My Commission Expires Dec 4, 2023
Commission Number 1026810

## VERIFICATION

I, Tina Chekan, Ed.D., being duly sworn, depose and say that I am CEO and Superintendent of Propel Charter School McKeesport, Propel Charter School Sunrise, Propel Charter School Pitcairn, Propel Charter School Hazelwood, Propel Charter School East, Plaintiffs in the above-captioned case, and have authorized the filing of this Complaint. I have reviewed the allegations made in the Complaint, and regarding those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on information obtained from employees and affected families at the above referenced Propel charter schools and believe those allegations to be true.


_____

Tina Chekan, Ed.D.
CEO and Superintendent of Plaintiff, Propel Schools


Sworn to me this 25th day of August, 2022.


_____

Notary Public