IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JERRELL ROHEILA, *et al*,

               *Plaintiffs*,

    v.

MCKEESPORT AREA SCHOOL
DISTRICT, *et al*,

               *Defendants*.

Civil Action No. 2:22-cv-1230

Hon. William S. Stickman IV
Hon. Cynthia Reed Eddy

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

      Plaintiffs brought this action after Defendant school districts cut busing to charter school students as a result of a nationwide school bus driver shortage. They filed a Motion for Entry of a Temporary Restraining Order and Preliminary Injunction (ECF No. 13) asking the Court to mandate that Defendant school districts reinstate busing to Plaintiff students. After carefully reviewing the record adduced by the parties and considering their arguments, the Court is compelled to deny the requested temporary restraining order and preliminary injunction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      Individual Plaintiff Jerrell Roheila is the parent of J.W., who resides in McKeesport Area School District and attends Propel Charter School-McKeesport. (ECF No. 1, ¶¶ 6, 7). Individual Plaintiff Rodney White is the parent of N.W. and N.W., who both reside in Woodland Hills School District and attend Propel Charter School-Pitcairn. (*Id.* ¶¶ 8, 9). Plaintiffs Propel Charter Schools ("Propel") is a nonprofit corporation operating thirteen different charter schools from kindergarten through twelfth grade. (ECF No. 23, p. 82). Plaintiff Young Scholars of Greater Allegheny

Charter School ("YSGA") is a nonprofit corporation operating a kindergarten through fifth grade charter school.  (ECF No. 1, ¶ 19).

Propel has students from thirty-six different school districts, two of which are Defendant McKeesport Area School District ("MASD") and Defendant Woodland Hills School District ("WHSD").  (ECF No. 23, p. 82).  YSGA also has students living in MASD and WHSD.  (*See id.* at 111, 126).  Prior to the 2022-2023 academic year, WHSD and MASD provided transportation for Propel and YSGA students living within the district, as required by Pennsylvania law.  (ECF No. 1, ¶ 31); *see* 24 Pa. Stat. Ann. § 17-1726-A.  All Propel Charter Schools began the 2022-2023 school year on Wednesday, August 17, 2022, and for the first four days of Propel's school year, Propel students were bused by MASD and WHSD as they had been in previous years.  (ECF No. 1, ¶¶ 37, 47).  As the start of MASD's school year approached, it became clear that MASD's sole transportation contractor, Krise Transportation ("Krise"), did not have enough drivers to satisfy the transportation needs of all students in the district.  (*See* ECF No. 22, Exhibit 6).

On May 25, 2022, the MASD School Board approved a proposal from Krise to provide student transportation from June 2, 2022, through June 30, 2029.  (ECF No. 22, Exhibit 5).  MASD Superintendent Dr. Tia Wanzo testified that she was in contact with Krise about driver shortages beginning shortly after the Krise proposal was approved.  (ECF No. 23, p. 139).  Propel was first informed of MASD's potential transportation issues on Friday, August 19, 2022, when the Supervisor of School Services for MASD, Thomas Knight ("Knight"), sent an email to Propel's Assistant Director of Student Affairs, Darren Stromock ("Stromock"), to notify him of "a strong possibility due to the driver shortage that we won't be able to run transportation to the Propel schools after Monday."  (ECF No. 22, Exhibit 6).  This was followed by another email on August

22, 2022, in which Knight notified Stromock that MASD was "currently unable to transport students to your schools." (ECF No. 22, Exhibit 7).

On Tuesday, August 23, 2022 ¬ the day MASD began its 2022-2023 school year ¬ MASD stopped providing transportation to Propel students. (ECF No. 1, ¶¶ 41, 42). As of September 1, 2022, MASD was providing transportation for all of its own students, but according to testimony from Dr. Tina Chekan ("Chekan"), Superintendent for Propel Schools, 187 of Propel's 298 students from McKeesport were without transportation. (ECF No. 23, pp. 15-16, 82-83). MASD represents that on September 12, 2022, MASD began "providing full transportation services to all students of Propel Charter School-McKeesport[.]" (ECF No. 28, p. 2). However, according to Plaintiffs, these buses arrive an hour after school begins and are similarly delayed transporting students home. (ECF No. 29, p. 18, n.11). MASD has also "made arrangements" to provide bus or van transportation to Propel-Pitcairn, Propel-Sunrise, Propel Hazelwood, and Propel-East beginning on September 14, 2022. (ECF No. 28, p. 2).

At the time of filing, MASD had not transported any YSGA students since YSGA's school year began on August 29, 2022. (ECF No. 23, p. 111). YSGA has 173 students living in MASD, 145 of whom rely on transportation from the District. (*Id.*). After receiving calls from concerned parents, Kelli Humphries ("Humphries"), YSGA's Director of Discipline and Student Services, contacted Knight on August 22, 2022, and was informed that MASD would not be able to transport YSGA students. (*Id.* at 111-12). Prior to that call, MASD had not notified YSGA about any potential transportation problems. (*Id.*) In a meeting on August 31, 2022, Humphries was informed by Knight that MASD would provide bus passes for any families who were interested. (*Id.* at 115). Knight also informed Humphries that he would investigate the possibility of MASD providing mileage reimbursements for families providing their own transportation. (*Id.* at 116).

MASD represents that on September 12, 2022, it began busing all YSGA students within the district. (ECF No. 28, p. 2). However, according to Plaintiffs, these buses are late transporting YSGA students home. (ECF No. 29, p. 18, n.11).

Like MASD, WHSD transported its Propel students for the first four days of Propel's school year. (ECF No. 1, ¶ 47). WHSD's transportation contractors did not have enough drivers to meet the district's transportation requirements once WHSD began its school year on Wednesday, August 24, 2022. (ECF No. 1, ¶ 45; ECF No. 22, Exhibit 10). On June 24, 2022, the WHSD School Board approved an agreement with Krise to provide student transportation from July 1, 2022, through June 30, 2029. (ECF No. 22, Exhibit 9). The contract between WHSD and Krise specifically includes the transportation of charter students and was intended to supplement WHSD's existing transportation contract with First Student, which was expected to provide 70% of student transportation, with Krise providing the remaining 30%. (ECF No. 23, pp. 56-57; ECF No. 22, Exhibit 9). Of the ten drivers WHSD expected Krise to provide for the start of school, Krise only provided two. (ECF No. 23, p. 57). As a result, WHSD cancelled eight bus routes district wide, seven of which were Propel routes. (*Id.*).

On August 23, 2022, WHSD Transportation Supervisor Stephanie Garrity sent an email notifying Propel that WHSD "will not have school bus transportation for your school at this time." (ECF No. 22, Exhibit 10). Specifically, the email listed Propel East Route 440; Propel Hazelwood Route 213; Propel Braddock Hills Routes 701, 702, 703, 704; and Propel Pitcairn Route 705 as "cancelled until further notice due to driver shortage." (*Id.*). The email explained that WHSD was waiting for new driver applicants to become CDL licensed and offered "all students Port Authority bus tickets or parent reimbursement until we have the yellow bus available." (*Id.*).

4

WHSD began its school year on Wednesday, August 24, 2022, and, as of September 1, 2022, the District was busing all Woodland Hills students.  (ECF No. 1, ¶ 45; ECF No. 23, p. 22). As of the same date, WHSD was not providing two buses (out of three) to Propel-East[1] and was providing no busing to Propel-Hazelwood, Propel-Braddock, and Propel-Pitcairn.[2]  (ECF No. 23, p. 20).  According to Dr. Chekan's testimony, 375 of Propel's 717 students from Woodland Hills were without transportation.[3]  (*Id.* at 83).  Currently, YSGA students within WHSD are being fully transported.  (*Id.* at 10).

Plaintiffs filed the Complaint in this action on August 25, 2022, raising the following causes of action:

- Count I: Violation of Fourteenth Amendment – Right to Due Process;
- Count II: Violation of Fourteenth Amendment – Equal Protection;
- Count III: Violation of Pa. Const. Art. I., § 1 – Right to Due Process;
- Count IV: Violation of Pa. Const. Art. I., § 26 – Equal Protection;
- Count V: Violation of Pa. Const. Art. 3, § 14 – Right to a Free Public Education;
- Count VI: Violation of Pennsylvania Public School Code.

(ECF No. 1, ¶¶ 63-111).  On August 29, 2022, Plaintiffs filed a Motion for Entry of a Temporary Restraining Order and Preliminary Injunction.  (ECF No. 13).  Plaintiffs seek an order enjoining MASD and WHSD "from unlawfully depriving K-12 students residing within ten (10) miles of the boundaries of their appropriate School District from bus transportation to and from Propel Charter School-Homestead, Propel Charter School-McKeesport, Propel Charter School-East,

---

[1] "As of the time of this filing on September 15, 2022 Woodland Hills expects to be able to bus for Propel East Route 440 on Monday, September 19, 2022[.]"  (ECF No. 30, pp. 2-3).

[2] WHSD "expects to be able to provide a bus for Propel Charter School-Pitcairn on Monday September 26, 2022."  (ECF No. 30, p. 3).

[3] According to Plaintiffs, "[s]ince the hearing, Propel Schools has received notice that additional Propel routes in the WHSD have been terminated, effective the week of September 12, 2022."  (ECF No. 29, p. 18, n.11).

Propel Charter School-Hazelwood, Propel Charter School-Sunrise d/b/a Propel Braddock Hills, Propel Charter School-Pitcairn, and Young Scholars of Greater Allegheny Charter School[.]" (ECF No. 10, p. 2). The Court scheduled a hearing on the request for preliminary injunctive relief for September 1, 2022. (ECF No. 14). Following oral argument, the parties submitted supplemental briefing with respect to a number of factual and legal issues critical to the Court's determination of the request for preliminary injunctive relief.

## II.  STANDARD OF REVIEW

The grant or denial of a preliminary injunction is within the sound discretion of a district court. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 178–79 (3d Cir. 2017) ("District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" (citation omitted)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle County*, 40 F.3d 645, 647 (3d Cir. 1994). The "status quo" refers to "the last, peaceable, noncontested status of the parties." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). Rather, such relief "should be granted only in limited circumstances." *Kos Pharms.*, 369 F.3d at 708 (citation omitted). A moving party "must establish entitlement to relief by clear evidence." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018). Specifically, the movant must demonstrate:

> (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.

*Kos Pharms.*, 369 F.3d at 708; *see also Winter*, 555 U.S. at 20.  The first two factors are "the most critical," and the moving party bears the burden of making the requisite showings.  *Reilly*, 858 F.3d 176, 179 (citations omitted).  Once those "gateway factors" are met, a court should "consider[] the remaining two factors" and then "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

In reaching its decision on a request for injunctive relief, a district court sits as both the trier of fact and the arbiter of legal disputes.  A court must, therefore, make "findings of fact and conclusions of law upon the granting or refusing of a preliminary injunction."  *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) (citing Fed. R. Civ. P. 52(a)(2)).  This "mandatory" requirement of Rule 52(a)(2) must be met "even when there has been no evidentiary hearing on the motion."  *Id.*  Nevertheless, at the preliminary injunction stage, "procedures [] are less formal and evidence [] is less complete than in a trial on the merits." *Kos Pharms.*, 369 F.3d at 718; *see also AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ("[T]he grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing [that] is the responsibility of the district judge." (citations omitted)).  Accordingly, a court "may rely on affidavits and hearsay materials which would not be admissible evidence." *Kos Pharms.*, 369 F.3d at 718 (quoting in parenthetical *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)).  But the weight given to such materials will "vary greatly depending on the facts and circumstances of a given case." *Id.* at 719. A court is also tasked with assessing the credibility of witness testimony and may base the decision to grant or deny a preliminary injunction on credibility determinations. *See, e.g., Hudson Glob. Res. Holdings, Inc. v. Hill*, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007).

## III.   ANALYSIS

**A.** **Plaintiffs' Motion for a Preliminary Injunction will be denied because they have not established that they are reasonably likely to succeed on the merits of their claims based on existing Pennsylvania law.**

### 1.   Threshold Standing Issues.

A threshold consideration in every federal case is whether the plaintiff has standing under Article III of the United States Constitution.   The parties vigorously dispute this point on two primary grounds.   First, Defendants argue that developments in the transportation situation since the filing of this action have rendered some of Plaintiffs' claims moot—eliminating the case and controversy as to those Plaintiffs. Second, Defendants argue that School Plaintiffs do not have standing to pursue their claims because they—like traditional public schools—are creations of the State akin to municipalities and cannot, therefore, assert constitutional claims.

### a)   *The Court declines to examine claims raised by Plaintiffs for whom transportation has been restored.*

The record adduced at the hearing and representations made by counsel in their supplemental briefs[4] demonstrates that transportation service has been restored to several Plaintiffs.   The following table reflects the current status of transportation for each of the named Plaintiffs:

| Parties | Woodland Hills School District | McKeesport Area School District |
|---|---|---|
| **Jerell Roheila (parent of Propel-McKeesport student)** | Not Applicable | Resolved as of 9/12/2022 when transportation began at Propel-McKeesport.  (ECF No. 28, p. 2). Plaintiffs note that the transportation that began on 9/12 to Propel-McKeesport is an hour late dropping kids off and returning them home.  (ECF No. 29, p. 18, n.11). |

---

[4] The Court will, for the purpose of its disposition of the issues at bar, credit the representations made in the parties' supplemental briefing.   Those representations were made by counsel as officers of the Court and subject to the provisions of Rule 11. They reflect ongoing and fluid developments that have occurred since the hearing.

| Rodney White (Parent of Propel-Pitcairn students) | X – Not receiving transportation services for children attending Propel-Pitcairn. | Not Applicable |
|---|---|---|
| Propel Charter School-Homestead | Full transportation services. (ECF No. 30, p. 2). | X – No Transportation. Anticipates transportation within a week. (ECF No. 28, p. 2). |
| Propel Charter School-McKeesport | Full transportation services. (ECF No. 30, p. 2). | Full transportation services as of 9/12/2022. (ECF No. 28, p. 2). Plaintiffs note that the transportation that began on 9/12 to Propel-McKeesport is an hour late dropping kids off and returning them home. (ECF No. 29, p. 18, n.11). |
| Propel Charter School-Sunrise | Full transportation services. (ECF No. 30, p. 2). | Full transportation services as of 9/14/2022. (ECF No. 28, p. 2). |
| Propel Charter School-Pitcairn | X – No Transportation. Expects to provide a bus by 9/26/2022. (ECF No. 30, pp. 2-3). | Full transportation services as of 9/14/2022. (ECF No. 28, p. 2). |
| Propel-Charter School-Hazelwood | X – No Transportation. | Full transportation services as of 9/14/2022. (ECF No. 28, p. 2). |
| Propel Charter School-East | X – Providing one bus (out of three). (ECF No. 23, pp. 19-20). Expects to be able to bus for Route 440 beginning on 9/19/2022. (ECF No. 30, pp. 2-3). | Full transportation services as of 9/14/2022. (ECF No. 28, p. 2). |
| Young Scholars of Greater Allegheny | Full transportation services. (ECF No. 23, pp. 19-20). | Full transportation services as of 9/12/2022. (ECF No. 28, p. 2). Plaintiffs note that the transportation that began on 9/12 to YSGA is arriving late to transport students home. (ECF No. 29, p. 18, n.11). |

Article III of the Constitution provides that federal courts may only exercise jurisdiction over "Cases" and "Controversies." U.S. Const. Art. III, § 2. The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). As the "part[ies] invoking federal jurisdiction," Plaintiffs bear the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). Here, the Court holds that only those Plaintiffs who have not had

transportation restored currently have Article III standing.  At this point, only those Plaintiffs have an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

Plaintiffs contend that the restoration of busing to certain Plaintiffs does not moot their claims because future disruptions could occur.  This is mere speculation relating to the possibility of future disruption.  Speculation as to future injury will not, as a general matter, confer Article III standing.

Nor does this case fall under the voluntary cessation doctrine.  The voluntary cessation doctrine can serve as an exception to mootness "when the defendant argues mootness because of some action it took unilaterally after the litigation began." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020).  *See also Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC) Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.").  "Voluntary cessation of challenged activity will moot a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Fields v. Speaker of Pennsylvania House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (quoting *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)).

In this case, there is nothing in the record to support a finding that Defendants merely suspended the implementation of a policy in order to moot this litigation.  Rather, the hearing record, and subsequent developments, suggest that Defendants have been doing exactly what they testified was their plan and policy—to reinstate transportation service as additional drivers and other logistical considerations permit.  They have not suspended the implementation of a prior

policy; they have only rectified the situation.  In other words, they have restored the status quo as it existed at the beginning of the school year.  This is not the type of case that falls within the narrow exception to the mootness doctrine represented by the voluntary cessation doctrine.

Because only Rodney White (parent of Propel-Pitcairn students), Propel-Homestead, Propel-Pitcairn, Propel-Hazelwood, and Propel-East are currently without service, the Court will address only their claims.  The other Plaintiffs' claims are moot.[5]

### b)   *The remaining Individual Plaintiff, Rodney White, has standing.*

Individual Plaintiff, Rodney White has Article III standing to bring claims against WHSD. White alleges that WHSD's failure to provide his children with transportation to Propel-Pitcairn deprived him of a legally protected property interest under state and federal law.  These allegations sufficiently establish an "injury in fact" for purposes of Article III standing.  White's injury in fact is "fairly traceable" to WHSD's challenged conduct – its failure to provide transportation to Propel-Pitcairn.   White seeks, in part, an order to prohibit WHSD from eliminating all transportation to Propel-Pitcairn.   Thus, White's injury is likely to be redressed by a judicial decision in his favor.

### c)   *The remaining School Plaintiffs have standing, with the sole exception of Propel Charter School East.*

Under Pennsylvania's Charter School Law, a charter school is an "independent public school established and operated under a charter from the local board of school directors and in which students are enrolled or attend." 24 Pa. Stat. Ann. § 17–1703–A.  Charter schools "operate[] with

---

[5] Plaintiffs assert that, for some routes which have been reinstated, the buses do not deliver students to their respective schools until significantly after the beginning of the school day.  This does not prevent the finding of mootness.  The question of whether late transportation will satisfy the Pennsylvania statutory requirement (or how late transportation can be before a deprivation is found) is a question best left for Pennsylvania courts.

the authorization of a local school district for the limited purpose of providing an alternate education option to students within the public education system." *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 908 F. Supp. 2d 597, 612 (M.D. Pa. 2012) (citing *Foreman v. Chester–Upland Sch. Dist.*, 941 A.2d 108, 115 (Pa. Cmwlth. 2008)).   "This relationship is analogous to that of a municipal corporation-creator where the powers granted to the municipal corporation are defined and limited by the creator." *Id.* Thus, a charter school cannot bring a constitutional claim against its chartering district, just as a municipal corporation cannot bring a constitutional claim[6] against its creator.[7] *Pocono Mountain Charter Sch.*, 908 F. Supp. 2d at 612. *See also I-Lead Charter Sch.-Reading v. Reading Sch. Dist.*, No. CV 16-2844, 2017 WL 2653722, at *3 (E.D. Pa. June 20, 2017) ("[A] charter school cannot sue its creator school district under [section 1983]."). Of the four charter school Plaintiffs that remain, only Propel-East brings a claim against its chartering school district. Propel-East is a regional charter school authorized by WHSD and Penn Hills School District. As such, Propel-East does not have standing to bring constitutional claims against WHSD.

---

[6] "[C]ourts that have allowed a municipality or municipal corporation to assert claims against its creator have generally permitted claims only for violations of the Supremacy Clause." *Pocono Mountain Charter Sch.*, 908 F. Supp. 2d at 612 . *See also Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cnty.*, 893 F.Supp. 301, 314 (D.N.J. 1995) ("[M]unicipalities may assert claims against the creating state under the Supremacy Clause, but not under other substantive constitutional guarantees.").

[7] *See, e.g., Nw. Sch. Dist. v. Pittenger*, 397 F.Supp. 975, 979 (W.D. Pa. 1975) ("a municipal corporation created by a State for the better ordering of government has no rights under the United States Constitution which it may invoke in opposition to the will of its creator"); *Coleman v. Miller*, 307 U.S. 433, 441 (1939) ("Being but creatures of the State, municipal corporations have no standing to invoke the contract clause or the provisions of the Fourteenth Amendment of the Constitution in opposition to the will of their creator."); *Williams v. Mayor & City Council of Baltimore*, 289 U.S. 36, 40 (1933) ("A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator.").

The other three remaining charter school Plaintiffs, Propel-Homestead, Propel-Pitcairn, and Propel-Hazelwood, are authorized by Steel Valley School District, Gateway School District and Pittsburgh School District, respectively.  Although none of the remaining charter school Plaintiffs assert a claim against a creator school district, WHSD and MASD argue that the charter schools nonetheless lack standing because they "have not plead any facts to support an injury in fact to the schools, rather than certain individual students." (ECF No. 28, p. 3). (*See also* ECF No. 30, p. 8). Plaintiffs, however, argue that the charter schools have associational standing to bring these claims on behalf of its students and their families.  (ECF No. 29, p. 4, n.1).

Generally, "one may not claim standing . . . to vindicate the constitutional rights of some third party*." The Pitt News v. Fisher*, 215 F.3d 354, 362 (3d Cir. 2000) (quoting *Singleton v. Wulff*, 428 U.S. 106, 114 (1976)).  However, "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975).  "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Each of these conditions to establish associational standing are met here.  First, charter school students and their families would have – and in the case of Rodney White, do have – standing to sue their school district for failing to provide statutorily guaranteed school transportation.  Second, in bringing this suit, the charter schools seek to protect their students' statutory right to receive school transportation¬ an interest clearly related to the charter schools' purpose of educating its students.  Finally, neither the claims asserted by the charter schools, nor the relief sought requires

individualized evidence from the charter schools' students or their families.  The charter schools and the school districts are better suited to provide information regarding school transportation policies.  As such, Propel-Homestead, Propel-Pitcairn, and Propel-Hazelwood have standing on behalf of their students and their families.

### 2. Plaintiffs have not established a reasonable likelihood of success on the merits of their Fourteenth Amendment Due Process & Pennsylvania Constitution, Article I, Section 1 Due Process claims.

This case is replete with issues that address matters of Pennsylvania law that would probably be more suitable for Pennsylvania courts.  Nevertheless, Plaintiffs have properly invoked federal question jurisdiction because they raise federal questions under the Fourteenth Amendment to the United States Constitution.  The first is a claim that Defendants' actions violated the due process clause, which provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; ***nor shall any State deprive any person of life, liberty, or property, without due process of law***; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amd. XVI, Section 1 (emphasis added).[8]  Plaintiffs allege that the deprivation of transportation services via bus or van constitutes a deprivation of a property interest without due process of law.  Specifically, they argue that provisions of the Pennsylvania Public School Law, 24 P.S. §17-1726-A, confer an entitlement to bus or van service that rises to the level of a protected property interest.  The record shows, and WHSD concedes, that Defendants afforded no process

---

[8] The Pennsylvania Constitution's due process provisions contained in Article I are "substantially equivalent" to the due process guarantees contained in the Fourteenth Amendment of the U.S. Constitution. *Hosp. & Healthsystem Ass'n of Pa. v. Com.*, 77 A.3d 587, 600, n.15 (Pa. 2013) (quoting *Krenzelak v. Krenzelak*, 469 A.2d 987, 991 (Pa. 1983)).  The examination of Plaintiffs' due process claims is, therefore, coterminous.

to Plaintiffs before terminating bus service.  As such, if there was a deprivation of a property

interest, they would be able to prevail on their procedural due process claims.  The critical question,

therefore, is whether Plaintiffs have established a reasonable likelihood of success on the question

of whether they were deprived of a property interest.

Whether Plaintiffs have been deprived of a property interest turns on Pennsylvania, rather

than federal law.  It is well-established that "a state law can create a property interest in a benefit

that the state cannot take away without due process of law."  *Mullen v. Thompson*, 155 F.Supp.2d

448, 452 (W.D. Pa. 2001).  One alleging a property interest in a benefit protected by due process

must go beyond showing an unsubstantiated expectation of the benefit.  *Carter v. City of*

*Philadelphia*, 989 F.2d 117, 120 (3d Cir. 1993) (citing *Board of Regents v. Roth,* 408 U.S. 564,

577 (1972)).  They must demonstrate entitlement to a property interest created expressly by state

statute or regulation or arising from government policy or a mutually explicit understanding

between a government employer and an employee. *Carter*, 989 F.2d at 120 (citing *Robb v. City of*

*Philadelphia,* 733 F.2d 286, 292 (3d Cir. 1984)).

In *Carter*, for example, the United States Court of Appeals for the Third Circuit held that

a Pennsylvania state statute created a property right in hiring preferences for veterans because the

entitlement was clear and unequivocal. *Carter*, 989 F.2d  at 122 ("The plain meaning of the statute,

in unequivocal terms, grants a preference to veterans in promotion. Thus, because Pennsylvania

law provides that veterans are to be accorded favorable consideration for promotions, we hold that

such preference is to be afforded constitutional protection.").  Here too, a Pennsylvania statute

created a clear and unequivocal entitlement to free school transportation for charter school

students.  The relevant portion of the statute states:

> Students who attend a charter school located in their school district of residence, a
> regional charter school of which the school district is a part or a charter school

located outside district boundaries at a distance not exceeding ten (10) miles by the nearest public highway ***shall be provided free transportation to the charter school by their school district of residence*** on such dates and periods that the charter school is in regular session whether or not transportation is provided on such dates and periods to students attending schools of the district.

24 Pa. Stat. Ann. § 17-1726-A(a) (emphasis added).  Given the statute's unambiguous and express grant of an entitlement to free transportation for charter school students, that entitlement rises to the level of a protected property interest that cannot be revoked without due process of law.[9]

Having determined that charter school students have a constitutionally protected property interest in receiving free school transportation, the next question is what constitutes "free transportation" under 24 Pa. Stat. Ann. § 17-1726-A.  Plaintiffs argue that if a school district is providing bus transportation to resident students attending the district's public school, it is "required to provide the same transportation to the resident charter school students[.]" (ECF No. 29, p. 10).  Defendants, on the other hand, argue that, under 24 Pa. Stat. Ann. § 17-1726-A, "free transportation" is not limited to transportation by school bus or school van, but includes providing students with public transportation passes, reimbursing parents for transporting their own children, and reimbursing charter schools for providing transportation.  According to MASD, it "offered public transportation passes, payment to parent drivers and payment to carriers contracted by Charter School Plaintiffs" when bus drivers were not available.  (ECF No. 28, p. 11).  Similarly, WHSD "has offered Port Authority bus tickets or transportation reimbursement to the Charter School students who have had their busing service interrupted[.]" (ECF No. 30, pp. 4-5).  Each of these transportation options, Defendants argue, satisfies the statutory obligation to provide "free

---

[9] In *Mosaica Academy Charter School v. Commonwealth of Pennsylvania Dep't of Educ.*, 813 A.2d 813 (Pa. 2002), the Supreme Court of Pennsylvania found that an earlier version of the Charter School Law mandated public school districts to provide transportation to charter school students, even where the school was located outside of the students' home district.

transportation" to resident charter school students.  (ECF No. 28, p. 11; ECF No. 30, pp. 9-10). The Court must determine, therefore, whether the substitutes to traditional busing offered by Defendants satisfies the Pennsylvania statutory mandate that they provide transportation to charter school students.

Plaintiffs have not cited, nor has the Court located, a single case where a Pennsylvania Court has interpreted the free transportation mandate conferred by Section 17-1726-A to require transportation by school bus or van.  Rather, in two recent cases, the respective trial court has rejected that position and, on appeal, the Commonwealth Court has either avoided the issue or affirmed the trial court's determination.

In *Bell v. Wilkinsburg Sch. Dist.* 252 A.3d 708, 710 (Pa. Commw. Ct. 2021), the plaintiffs (including Propel-Homestead) sued the Wilkinsburg School District when it stopped providing school bus transportation to charter school students and offered Allegheny County Port Authority bus passes as a replacement.  The Court of Common Pleas of Allegheny County held a non-jury trial on the plaintiffs' claims and ultimately dismissed them.  The trial court concluded, in relevant part, that the defendant school district did not violate Section 1726-A "by not providing private bus transportation to resident students in grades K-5 who attend Propel [Charter Schools'] schools." *Id.* at 711.  On appeal, the Commonwealth Court of Pennsylvania avoided the issue of whether providing public transportation passes satisfies the requirement to provide "free transportation" under the statute, instead focusing on whether the school district needed pre-approval from the Pennsylvania Department of Education before altering its transportation policies. *Id.* at 712.  It held that the defendant school district violated Section 23.3 of the State Board of Education's regulations by failing to obtain board approval before changing its transportation regimen.  The school district sought, and obtained, Allocatur from the Supreme

Court of Pennsylvania. *Bell v. Wilkinsburg Sch. Dist.,* 266 A.3d 447 (Pa. 2021) (Holding that the issue of whether passes for public transit will satisfy the obligation to provide free transportation was not before the Supreme Court.).

In *Hoffman v. Steel Valley Sch. Dist.*, 107 A.3d 288, 295 (Pa. Commw. Ct. 2015), the parent of a student brought an action seeking a preliminary injunction against the defendant Steel Valley School District when it discontinued van transportation to a charter school within the district.  In place of van transportation, the district offered to reimburse families for the cost of public transportation or for the cost of mileage if parents provided transportation.  The record established that the school district did "not provide busing or van service for any of its regular students attending schools within the district, but it provides a shuttle service for kindergarten students back and forth between its primary center and its elementary schools."  *Id.* at 290.  The Court of Common Pleas of Allegheny County denied the request for injunctive relief, holding that the requirement of free transportation mandated by Section 1726-A should be read *in pari materia* with the transportation provisions of 24 P.S. §13-1362, which permits the use of public transportation.  The trial court did not specifically examine or decide whether the reimbursement policy satisfied the statutory requirement.

On appeal, in deciding whether the plaintiff had established a clear right to the relief sought, the Commonwealth Court of Pennsylvania did not offer an opinion on "whether the mileage reimbursement satisfies the School District's statutory obligation[.]" *Hoffman.*, 107 A.3d at 294. The court did, however, affirm the Court of Common Pleas' decision that Section 17-1726-A and Section 1362 should be construed *in pari materia*.  Moreover, it affirmed the determination that doing so "does not compel a conclusion that the School District must provide private transportation for Plaintiff's children to Young Scholars by means of a bus or a van[.]" *Id.* at 295.

18

Thus, neither in *Bell* nor in *Hoffman* did Pennsylvania appellate courts hold that the transportation mandate of Section 17-1726-A can only be satisfied by school bus or van transportation.  Indeed, in *Hoffman,* the Commonwealth Court of Pennsylvania determined that neither that statute nor Section 1362 required transportation by bus or van, affirming a determination that public transportation passes satisfy the right to "free transportation" under the Charter School Law.

As stated above, Plaintiffs' federal due process claim (and its parallel state constitutional equivalent) hinge on the question of whether the state entitlement to free transportation can be satisfied by substituting public transportation passes and/or reimbursements for traditional school bus or van service.  This Court must make its determination based on the applicable Pennsylvania statute and cannot ignore Pennsylvania cases interpreting that statute and the obligations that it imposes.  In both *Bell* and *Hoffman*, the Court of Common Pleas of Allegheny County held that school bus or van transportation was not necessary to satisfy the requirements of Section 17-1726-A, and that transit passes and mileage reimbursement were permissible substitutes.  In *Hoffman*, the Commonwealth Court of Pennsylvania affirmed that determination as to transit passes.  This Court—a federal court—is faced, therefore, with a situation where no Pennsylvania state court has reached the conclusion that Plaintiffs argue is required under the relevant Pennsylvania state statute.  Indeed, both the Court of Common Pleas of Allegheny County and the Commonwealth Court of Pennsylvania have rejected their position.  The Court will not substitute its judgment for the judgment of the courts of the sovereign with the most immediate interest in this instant dispute—Pennsylvania.  In light of the repeated refusal of Pennsylvania courts to decide that the free transportation requirement of Section 17-1726-A can only be satisfied by school bus or van transportation, the Court cannot find that Plaintiffs have met their burden of demonstrating a

reasonable likelihood of success on that issue. The Court does not believe that existing Pennsylvania case law interpreting the critical state statute supports Plaintiffs' position. Nor does the Court believe that it (rather than Pennsylvania courts) is the appropriate tribunal to develop Pennsylvania law beyond (or in opposition to) the direction set by the Court of Common Pleas of Allegheny County and the Commonwealth Court of Pennsylvania.

3. **Plaintiffs have not established a reasonable likelihood of success on the merits of their Fourteenth Amendment Equal Protection & Pennsylvania Constitution Article I, Section 26 Equal Protection claims.**

Plaintiffs also claim that Defendants' actions violated the Equal Protection Clause of the Fourteenth Amendment, which states that "[n]o state shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.[10] Plaintiffs bring the equal protection claim as a "class of one." To establish a "class of one" equal protection claim, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d. Cir. 2006).

Plaintiffs argue that charter school students who reside within WHSD or MASD were treated differently from the districts' students who are similarly situated. As the appropriate level of constitutional scrutiny, Plaintiffs rely on *Plyler v. Doe,* 457 U.S. 202 (1982), to argue that a heightened level of scrutiny should be applied. Specifically, Plaintiffs argue for intermediate scrutiny, "which is less demanding than 'strict scrutiny' but more demanding than the standard rational relation test, [and] has generally been applied only in cases that involved discriminatory

---

[10] An equal protection claim brought under Article I, Section 26 of the Pennsylvania Constitution should be evaluated using "the same standards applicable to federal equal protection claims*.*" *Kramer v. W.C.A.B. (Rite Aid Corp.)*, 883 A.2d 518, 532 (Pa. 2005).

classifications based on sex or illegitimacy." *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 459 (1988).

In *Plyler*, the Supreme Court was asked to determine whether, under the Equal Protection Clause of the Fourteenth Amendment, a state could deny undocumented children the public-school education it was providing to its citizens and to legally admitted immigrants. *Plyler*, 457 U.S. at 205. In deciding that question, the Court applied a heightened level of scrutiny for several fact-specific reasons. While acknowledging that there is no fundamental right to an education under the U.S. Constitution, the Court noted the importance of education and the lasting impact caused by its deprivation. *Id.* at 221. The deprivation of education alone, however, was not enough to apply heightened scrutiny. The Court feared that denial of public education to undocumented children could promote "the creation and perpetuation of a subclass[.]" *Id.* at 230. More importantly, the Court emphasized the fact that the children being denied an education were "special members of this underclass" because they were "not accountable for their disabling status." *Id.* at 219, and 223. In other words, the Court recognized that the undocumented children should not be held responsible for their parents' decisions or citizenship status.

The holding in *Plyler* has not been extended "beyond the 'unique circumstances,' that provoked its 'unique confluence of theories and rationales[.]'" *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 459 (1988) (quoting *Plyler*, 457 U.S. at 239 (Powell, J., concurring); *Plyler*, 457 U.S. at 243 (Burger, C.J., dissenting)) (citations omitted). To determine whether circumstances are sufficiently similar to those presented in *Plyler*, we look "to the elements central to the *Plyler* Court's invocation of heightened scrutiny in the context of a deprivation of public school instruction: a denial of education; plaintiffs' lack of power over their disabling status; the importance of the right in maintaining basic institutions; and the consequences to individuals

flowing from deprivation of the right." *Brian B. v. Com. of Pa. Dep't of Educ.*, 51 F. Supp. 2d 611, 625 (E.D. Pa. 1999). Here, unlike in *Plyler*, children are not being deprived access to the public school system, but to transportation to that public school system. Additionally, children in this matter are not being punished for illegal conduct of their parents and there is no threat of Defendants' alleged statutory violations creating a "subclass." Because the facts here are not sufficiently similar to the "unique circumstances" in *Plyler*, the Court declines to extend a heightened level of scrutiny.

Thus, to state a claim for a "class of one" equal protection claim, Plaintiffs must satisfy the rational basis prong. That is, in addition to showing that Defendants intentionally treated Plaintiffs differently from others who were similarly situated, Plaintiffs must show that "there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d. Cir. 2006). "A plaintiff must show that the differential treatment was irrational and wholly arbitrary. These challenges fail when there is any reasonably conceivable state of fact that could provide a rational basis for the classification." *Tucker Indus. Liquid Coatings, Inc. v. Borough of E. Berlin*, 85 F. Supp. 3d 803, 811 (M.D. Pa. 2015) (internal citations omitted). Indeed, under the rational basis level of scrutiny, a defendant does not even have to articulate specific reasons to support its actions. *Mary Beth's Towing LLC v. Borough of Brownsville*, 2018 WL 1784556, *6 (W.D. Pa. Apr. 13, 2018). Rather, "the rational basis standard permits a court to hypothesize interests that might support the governmental distinctions." *Id.*

In light of the high bar of showing unconstitutional governmental action under the rational basis test, Plaintiffs have not established the "high hurdle" needed to establish reasonable likelihood of success on the merits of their equal protection claim. Stated another way, the Defendants have offered explanations for their transportation decisions that are sufficient to satisfy

the very deferential standard required for rational basis scrutiny.  WHSD offered testimony that it prioritizes its own district students to maximize the number of students that can be transported with limited bus space (in light of the fact that far more students attend district schools than the charter schools).  McKeesport offered similar testimony to support prioritizing its own students on the available buses.  In addition, WHSD offered the rationale that its transportation decisions are also influenced by the union drivers' contract.

Plaintiffs have failed to overcome the great deference afforded to governmental decisions under the rational basis test.  As such, they are not able to establish a reasonable likelihood of success on the merits of their equal protection claims.

### 4.  State Court Causes of Action.

The bulk of Plaintiffs' claims relate to their due process and equal protection claims. Nevertheless, their motion incorporates all of the causes of action set forth in their Complaint— which includes stand-alone state law claims without federal analogue.  Because the Court has found that Plaintiffs are unlikely to succeed on the merits of their federal claims, it will abstain from examining their independent state law causes of action.[11]

---

[11] When a district court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), it has discretion to exercise or decline to exercise this jurisdiction.  *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003).   The statute provides that a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).   "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster, 45 F.3d 780*, 788 (3d Cir.1995).

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Entry of a Temporary Restraining

Order and Preliminary Injunction (ECF No. 13) will be denied.  An Order of Court will follow.


BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

9-26-22
Dated